IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**SMITH'S FOOD & DRUG
CENTER'S, INC.,**

      Plaintiff,

      vs.                                      **No. 1:12-CV-00890-MCA-LFG**

**UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL NO.
1564,**

      Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *United Food and Commercial Workers Union, Local No. 1564 Motion to Strike* [Doc. 11] and *Motion to Dismiss* [Doc. 12]. Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants both motions.

**I.**    **BACKGROUND**

On August 17, 2012, Plaintiff, Smith's Food & Drug Centers, Inc. (Smith's), filed a *Petition to Vacate Arbitration Award and Brief in Support*. [Doc. 1]  The *Petition* arises out of a grievance dispute that Defendant, United Food and Commercial Workers Union, Local No. 1564 (the Union), filed against Smith's on September 29, 2011.  In the grievance, the Union alleged that Smith's "had violated the terms of the parties' collective

bargaining agreement in connection with the preparation of merchandising displays in the meat department of Smith's Store No. 459 in September of 2011." [Doc. 1 at 2] Pursuant to the terms of the collective bargaining agreement, the parties submitted the grievance to arbitration. The Arbitrator, C. Allen Pool, held an arbitration hearing on April 19, 2012. [Id.]

On June 11, 2012, Arbitrator Pool issued an Award and Opinion denying the Union's grievance. Section 1.2 of the Collective Bargaining Agreement (CBA) provides as follows:

> Section 1.2 – Bargaining Unit Work. No employees of the Company, other than employees under the jurisdiction of the Union, will be permitted to cut and wrap meat, except for instruction, business needs, cutting test, store openings and remodeling. The Company will assure that meat cases shall be stocked by members of the bargaining unit to assure an adequate supply of meat for sale. Outside suppliers or salesmen shall not be permitted to stock or price merchandise in the store. Meat department employees shall continue to stock all items currently being stocked as of June 6, 2009, unless such items are discontinued or the Employer first bargains with the Union over the effects of any proposed change.

[Doc. 1-1 at 9] See Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007) ("Documents attached to the complaint are considered as part of the pleadings."). Arbitrator Pool observed that:

> The language of Section 1.2 of the CBA is clear. The work of cutting and wrapping and stocking of meat products and the stocking of cheese on the shelves for public display is bargaining unit. Non-bargaining unit employees, supervisors, venders, and salespersons are limited to instruction and resetting products on the shelves for purposes of display, i.e., merchandising.

[Doc. 1-1 at 2-3] However, Arbitrator Pool denied the Union's grievance because "no

2

evidence was put forth showing that the Employer violated the CBA." [Doc. 1-1 at 5] Although the grievance alleged that a non-bargaining unit member, a vender, had been stocking products on the shelves of the cheese display in violation of Section 1.2 of the CBA, there was not "anything put into the evidence record showing that the vender put any of the product on the cheese display shelves." [Doc. 1-1 at 5]

In its *Petition*, Smith's contends that Arbitrator Pool's observation that "[n]on-bargaining unit employees, supervisors, venders, and salespersons are limited to instruction and resetting products on the shelves for purposes of display, i.e., merchandising," is "inconsistent with–indeed, flatly contradicts–Section 1.2 of the parties' collective bargaining agreement, which specifically provides that non-bargaining unit members are allowed to cut and wrap meat for, among other things, 'business needs, cutting tests, store openings and remodeling.'" [Doc. 1 at 3]  Smith's alleges that the Union has since used the language from Arbitrator's Pool's Opinion and Award in a subsequent arbitration in an attempt to limit Smith's contractual rights.  [Id.]  Smith's further alleges that Arbitrator Pool exceeded the scope of his authority when he "ignored the plain language of the collective bargaining agreement" and, therefore, the award must be vacated. [Id.]

On September 24, 2012, the Union filed *United Food and Commercial Workers Union, Local No. 1564 Motion to Strike* [Doc. 11].  The Union contends that Exhibits 4 and 5, which were attached to the *Petition,* should be stricken because they are outside of the arbitral record.  Exhibit 4 is an e-mail exchange between counsel regarding Smith's

request for clarification of Arbitrator Pool's statement interpreting Section 1.2 of the CBA. [See Doc. 1-1 at 13-14] Exhibit 5 is the Union's *Post-Arbitration Brief* in a separate grievance proceeding, which relies on Arbitrator Pool's construction of Section 1.2 of the CBA. [See Doc. 1-1 at 15-18] Smith's responds that the motion to strike should be denied because Smith's does not rely on Exhibits 4 and 5 for the purpose of interpreting the CBA. Rather, Smith's relies on Exhibits 4 and 5 to establish that it has suffered an actual and imminent injury-in-fact sufficient to confer standing. [Doc. 14]

On September 27, 2012, the Union filed a *Motion to Dismiss* [Doc. 12] the *Petition* for lack of standing. The Union contends that Smith's "has not suffered an injury in-fact because it prevailed at the arbitration phase." [Doc. 12 at 3] The Union further contends that Smith's argument that Arbitrator Pool's interpretation of the CBA "may be used to its detriment in the future" is purely "conjectural and hypothetical" and, therefore, insufficient to satisfy the injury-in-fact requirement. [Doc. 12 at 4]

Smith's responds that it has been injured by the arbitration award because the award eliminates Smith's contractual rights under Section 1.2 of the CBA. Smith's alleges that "arbitrators may consider themselves bound by Arbitrator Pool's award" because "[a]n award interpreting a collective [bargaining] agreement usually becomes a binding part of the agreement and will be applied by arbitrators thereafter." [Doc. 15 at 3 (quoting Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1425 (8th Cir. 1986)]. Indeed, Smith's contends that "[t]his injury is both concrete and actual" because the Union is "already using the Award as a basis for grievances in which it

asserts that Smith's has violated contractual limitations on Smith's right to have non-bargaining employees do work in the meat department." [Doc. 15 at 3] Smith's further contends that it has suffered an injury-in-fact pursuant to Protocols, LLC v. Leavitt, 549 F.3d 1294 (10th Cir. 2008), because it "faces a contingent liability that creates a present impact on its operations." [Doc. 15 at 4]

**II.      DISCUSSION**

*A.      Motion to Strike*

Judicial review of an arbitral award "is among the narrowest known to law." Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 87 (10th Cir. 1994) (internal quotation marks and citation omitted). "The arbitrator's factual findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract. As long as the arbitrator's award 'draws its essence from the collective bargaining agreement' it must be upheld." Id. (internal quotation marks and citations omitted.)

In ruling on a motion to vacate an arbitration award, the district court cannot consider evidence extrinsic to the arbitral record, but "must limit itself to the narrow question of whether the arbitrator's decision lacked any basis in the contractual text." San Juan Coal Co. v. Int'l Union of Operating Eng'r, Local 953, 672 F.3d 1198, 1201 (10th Cir. 2012). "To go beyond that usurps a function which . . . is entrusted to the arbitration tribunal." Id. (internal quotation marks and citation omitted).

Smith's does not dispute that, in ruling on a motion to vacate an arbitration award, this Court is limited to the arbitral record. Rather, Smith's contends that this court may consider evidence extrinsic to the arbitral record to address "question[s] quite apart form the substantive merits regarding whether the arbitrator's award lacks a basis in the contractual text." [Doc. 14 at 2] Smith's asserts that the question of whether Smith's has suffered an injury-in-fact sufficient to confer standing is "just such" a question. Because Smith's submitted Exhibits 4 and 5 in support of the injury-in-fact requirement, rather than to undermine Arbitrator Pool's construction of the CBA, Smith's argues that the motion to strike should be denied.

Assuming, without deciding, that the Court can consider documents extrinsic to the arbitral record in order to determine whether a party has standing to vacate an arbitration opinion and award, the Court nonetheless will grant the Union's motion to strike because Exhibits 4 and 5 fail to establish that Smith's has suffered an injury-in-fact.

Exhibit 4 is an e-mail exchange between counsel in which Smith's asks for the Union's agreement to seek clarification from Arbitrator Pool regarding his interpretation of Section 1.2 of the CBA. The Union refused to agree to seek clarification, citing the doctrine of *functus officio*. [Doc. 1-1 at 13-14] The Union's refusal to seek clarification from Arbitrator Pool fails to establish that Smith's suffered an injury-in-fact and, therefore, the Union's motion to strike Exhibit 4 will be granted.

Exhibit 5 is a *Post-Arbitration Brief* in a separate grievance proceeding, in which the Union cites Arbitrator's Pool's interpretation of Section 1.2 of the CBA to argue, in

6

relevant part, that "the exclusive nature of the meat department employees work is no longer at issue as it has been decided by Arbitrator Pool" and that "Arbitrator Pool's decision leaves no doubt that non-bargaining unit employees are strictly limited to what work they can perform in the meat department." [Doc. 1-1 at 16, 18] However, the Union also explicitly recognized that:

> Section 1.2 contains and has specific exceptions that allows Smith's to perform meat bargaining work which are: instruction, business needs, cutting test, store openings and remodeling. There was no evidence presented by Smith's that code date checking falls within those exceptions. The reason no evidence was presented is because code date checking does not fall within those exceptions.

[Doc. 1-1 at 17] Thus, the Union explicitly recognized the contractual exceptions that Smith's seeks to vindicate in this litigation. This exhibit therefore fails to establish that the Union has relied on Arbitrator Pool's Opinion and Award in an attempt to limit or circumscribe Smith's contractual rights under Section 1.2 of the CBA. Regardless, as Smith's admits in its *Response to Motion to Dismiss*, "[u]ltimately, the arbitrator in the grievance in which Respondent made these arguments found Arbitrator Pool's award distinguishable." [Doc. 15 at 4 n.1] See generally Elkouri & Elkouri, How Arbitration Works, § 11.3.C (6th Ed. 2003) ("Frequently, when prior awards are cited by a party as being authoritative, the arbitrator will avoid giving preclusive effect by distinguishing them."). In light of these facts, the Union's motion to strike Exhibit 5 will be granted.

*B.*     *Motion to Dismiss*

Fed. R. Civ. P. 12(b)(1) allows for the dismissal of a claim for lack of subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, Rule 12(b)(1) motions to dismiss for lack of jurisdiction will come in the form of (1) a facial attack, in which case the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true, or (2) a factual attack, where the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. Paper, Allied-Industrial, Chem. And Energy Workers Intern. Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005). The Union has not supported its motion to dismiss with affidavits or other evidence and, therefore, the Court construes the motion as a facial attack. In a facial attack, the Court reviews the allegations in the Complaint under the same standards as a 12(b)(6) motion. See Muscogee (Creek) Nation v. Okla. Tax. Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

The Union contends that Smith's lacks standing to vacate Arbitrator Pool's Opinion and Award because it was the prevailing party in the arbitration below. "The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1153 (10th Cir. 2013) (internal quotation marks and citation omitted).

> To satisfy constitutional standing requirements, a plaintiff must demonstrate the presence of three elements: (1) injury in fact-meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct-meaning that the injury can fairly be traced to the action of the defendant; and (3) a likelihood that the injury will be redressed by a

>favorable decision-meaning that the prospect of obtaining relief from ... a favorable ruling is not too speculative.

Rector v. City and County of Denver, 348 F.3d 935, 942 (10th Cir. 2003) (citation omitted).

It is well established that "[a] prevailing party may not appeal and obtain a review of the merits of findings it deems erroneous which are not necessary to support the decree." Affiliated Ute Citizens of the State of Utah v. Ute Indian Tribe of the Uintah and Ouray Reservation, 22 F.3d 254, 255 (10th Cir. 1994); see also California v. Rooney, 483 U.S. 307, 311-13 (1987) (dismissing a writ of certiorari as improvidently granted because the appellant was the prevailing party below). However, the United States Supreme Court has recognized that "an appeal brought by a prevailing party may satisfy Article III's case-or-controversy requirement" if "the litigant retains the necessary personal stake in the appeal." Camreta v. Greene, 131 S.Ct. 2020, 2028-29 (2011). For example, "where a judgment gives the successful party only part of that which he seeks and denies him the balance, with the result that injustice has been done him, he may appeal from the entire judgment." Jarvis v. Nobel/Sysco Food Serv. Co., 985 F.2d 1419, 1424 (10th Cir. 1993) (internal quotation marks and citation omitted); see also Camreta, 131 S.Ct. at 2029 (noting that the "Article III standard often will be met when immunized officials seek to challenge a ruling that their conduct violated the Constitution").

Smith's does not allege that it was denied a portion of the relief sought in the arbitration below. Rather, Smith's alleges that it is injured by the arbitration award

9

because "[a]n award interpreting a collective [bargaining] agreement usually becomes a binding part of the agreement and will be applied by arbitrators thereafter." [Doc. 15 at 3 (quoting Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1425 (8th Cir. 1986)]. In support of this proposition, Smith's cites an Eighth Circuit Court of Appeals case, Trailways Lines, Inc., which relied on the treatise How Arbitration Works. See Elkouri & Elkouri, How Arbitration Works (BNA 4th Ed. 1985). In the most recent edition of How Arbitration Works, the authors note that the prior awards of "temporary arbitrators, also known as ad hoc arbitrators, . . . may have authoritative force" because "[t]heir awards interpreting a collective bargaining agreement usually become binding parts of the agreement and will be followed by arbitrators thereafter." Elkouri & Elkouri, How Arbitration Works, § 11.3.C (6th Ed. 2003). However, "[a]n arbitrator understandably may feel less firmly bound by another arbitrator's award if it is not accompanied by a reasoned opinion, and dictum statements of a prior ad hoc arbitrator may carry little or no weight." Id.

 In this case, Arbitrator Pool's interpretation of section 1.2 of the CBA is mere dicta because it was not necessary to the opinion and award. See Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1184 (10th Cir. 1995) ("Dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.") (internal quotation marks and citation omitted). Arbitrator Pool failed to sustain the Union's grievance, not based on his conclusion that, under Section 1.2 of the CBA "[n]on-bargaining unit employees, supervisors, venders,

and salesperson are limited to instruction and resetting products on the shelves for the purposes of display, i.e., merchandising," but rather based on the Union's failure to proffer any evidence in support of its allegation that a non-Union member had been stocking the shelves. Thus, Arbitrator Pool's construction of the CBA constitutes dicta, which carries "little or no weight" in a subsequent arbitration. Elkouri & Elkouri, supra, § 11.3.C; cf. Passa v. City of Columbus, 266 F.R.D. 197, 204 (S.D. Ohio 2010) (holding that a statement of the arbitrator was not entitled to preclusive effect because it "amount[ed] to nothing more than non-binding dicta"). Because it carries little or no weight, the Court concludes that Smith's has not suffered any injury or injustice sufficient to confer standing.[1]

The Court acknowledges Smith's argument that case law limiting the appellate rights of prevailing parties "simply [is] not applicable to actions to vacate arbitration decisions." [Doc. 15 at 5] Smith's points out that the foregoing case law does "not attempt to tackle what the proper scope of an action to vacate an arbitration award would be." [Doc. 15 at 5] Smith's is correct that the rule limiting the appellate rights of prevailing parties does not explicitly apply to an action to vacate an arbitration award. Indeed, the parties have cited no case law, and the Court has found none, that directly

---

[1] Because Arbitrator Pool's statement is not entitled to preclusive effect, Smith's does not face contingent liability as a consequence of the decision. Therefore, Smith's reliance on Protocols LLC v. Leavitt, 549 F.3d 1294 (10th Cir. 2008), which holds that the actual and imminent consequences of a contingent liability can present sufficient injury for Article III standing, is misplaced.

addresses the issue of whether a prevailing party in an arbitration proceeding has standing in the district court to vacate an arbitration award. However, even in the context of arbitration, the party seeking to invoke the jurisdiction of the district court must establish the existence of a case or controversy in accordance with the requirements of Article III. See Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of America and Its Amalgamated Local Union No. 1369 v. Telex Computer Products, Inc., 816 F.2d 519, 522 n.1 (10th Cir. 1987) ("In the federal courts it is a constitutional requirement that the proceedings before those courts constitute 'cases' and 'controversies.'"). Because the case or controversy requirement is subject matter jurisdictional, Smith's bears the burden to establish that it "retains the necessary personal stake" in the present proceedings  See Camreta, 131 S.Ct. at 2028-29.

Smith's points out that "dismissing this case would mean that Smith's would have no opportunity for review of Arbitrator Pool's decision interpreting its collective bargaining agreement – ever." [Doc. 15 at 7]  Although this is true, the Court notes that because Smith's is unable to seek review of Arbitrator Pool's statement interpreting Section 1.2 of the CBA, this statement necessarily lacks preclusive effect. It is well established that "relitigation of the issue in a subsequent action between the parties is not precluded" when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action."  1 Restatement (Second) of Judgments, § 28(1) (1982).  Thus, "[i]f review is unavailable because the party who lost on the issue obtained a judgment in his favor, then the generale rule of [issue

preclusion] is inapplicable by its own terms." Id., cmt. a; see also In re C and M Properties, L.L.C., 563 F.3d 1156, 1166 (10th Cir. 2009) (concluding that issue preclusion does not apply to remanded claims because there is no opportunity for appeal and because issue preclusion only applies to "a valid and final judgment to which resolution of a particular issue was necessary") (internal quotation marks and citation omitted)).  Smith's was the prevailing party below and, for the reasons previously explained, it lacks standing to vacate the challenged dicta in Arbitrator Pool's Opinion and Award.  Because the challenged dicta is unreviewable, it cannot be given preclusive effect in a subsequent arbitration.  Smith's has failed to fulfill its burden to demonstrate that it retains the necessary personal stake in the present proceedings and, therefore, the Union's motion to dismiss will be granted.

## III.    CONCLUSION

Smith's, the prevailing party in the arbitration below, has failed to fulfill its burden to prove that it retains the necessary personal stake in these proceedings to confer Article III standing.

**IT IS THEREFORE HEREBY ORDERED** that *United Food and Commercial Workers Union, Local No. 1564 Motion to Strike* [Doc. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Union's *Motion to Dismiss* [Doc. 12] is **GRANTED**.

**SO ORDERED** this 28th day of June, 2013, in Albuquerque, New Mexico.

13

                                                                     _____
M. CHRISTINA ARMIJO
Chief United States District Judge